**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| CHARLES ZIEGENFUSS, DAVID MONTGOMERY, BRIAN ROBINSON, and FIREARMS POLICY COALITION, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> FREEMAN MARTIN, in his official capacity as Director and Colonel of the Texas Department of Public Safety; JAMES STAINTON, in his official capacity as Wise County District Attorney; CARY MELLEMA, in his official capacity as Wise County Sheriff; JETT SMITH, in his official capacity as Palo Pinto County District Attorney; J.R. PATTERSON, in his official capacity as Palo Pinto County Sheriff; ERLEIGH N. WILEY, in her official capacity as Kaufman County District Attorney; BRYAN BEAVERS, in his official capacity as Kaufman County Sheriff; PHIL SORRELLS, in his official capacity as Tarrant County District Attorney; BILL E. WAYBOURN, in his official capacity as Tarrant County Sheriff; JOHN CREUZOT, in his official capacity as Dallas County District Attorney; MARIAN BROWN, in her official capacity as Dallas County Sheriff; and THOMAS W. GRAHAM, in his official capacity as Executive Director of the Texas Alcoholic Beverage Commission, <br><br> *Defendants.* | CIVIL ACTION NO. 4:24-cv-01049-P |

**FIRST AMENDED COMPLAINT**

-1-

Plaintiffs Charles Ziegenfuss; David Montgomery; Brian Robinson; and Firearms Policy Coalition, Inc. ("FPC") (collectively, "Plaintiffs"), by and through the undersigned attorneys, file this Complaint against Defendants Texas Director of the Texas Department of Public Safety Steven C. McCraw in his official capacity; James Stainton, in his official capacity as Wise County District Attorney; Cary Mellema, in his official capacity as Wise County Sheriff; Jett Smith, in his official capacity as Palo Pinto County District Attorney; J.R. Patterson, in his official capacity as Palo Pinto County Sheriff; Erleigh N. Wiley, in her official capacity as Kaufman County District Attorney; Bryan Beavers, in his official capacity as Kaufman County Sheriff; Phil Sorrells, in his official capacity as Tarrant County District Attorney; Bill E. Waybourn, in his official capacity as Tarrant County Sheriff; John Creuzot, in his official capacity as Dallas County District Attorney; Marian Brown, in her official capacity as Dallas County Sheriff; and Thomas W. Graham, in his official capacity as Executive Director of the Texas Alcoholic Beverage Commission as the state officials responsible under Texas law for administering and enforcing the State's laws and regulations governing carriage of firearms in public. In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

## INTRODUCTION

1. In *New York State Rifle & Pistol Association v. Bruen*, the Supreme Court explicitly stated that "the Second Amendment guarantees a general right to public carry," meaning that ordinary, law-abiding citizens may "'bear' arms in public for self-defense." 597 U.S. 1, 33 (2022). Yet Texas law bans carrying firearms in several public places. Texas Penal Code § 46.03 ("Section 46.03") criminalizes possession of firearms at, among other locations: (a) businesses where alcohol accounts for 51% of the business' sales, (b) racetracks, and (c) sporting events. Plaintiffs bring this suit to challenge Section 46.03's carry ban in those three locations (the "Carry Bans").

-2-

2.      Plaintiffs Ziegenfuss, Montgomery, Robinson (the "Individual Plaintiffs") are law-abiding citizens of the United States who reside in Texas and wish to exercise their fundamental, individual right to bear arms in public for lawful purposes including self-defense and would do so but for Defendants' enforcement of Section 46.03's prohibitions at the venues at issue in this case.

3.      Under *Bruen*, the Individual Plaintiffs' proposed conduct is "presumptively protect[ed]" under the Second Amendment, so the State bears the burden of "justify[ing] its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24.

4.      But the State cannot meet its burden here, as there is no historical tradition for banning the carriage of firearms at these or analogous locations. As demonstrated further below, these are not so-called "sensitive places" where Texas can disarm people, such as Plaintiffs; indeed, the challenged locations cannot be analogized to the very few—and very different—locations where bearing arms was prohibited under constitutionally relevant American history (at and around the time of the Founding).

5.      Accordingly, Defendants' enforcement of the Carry Bans violates the Second Amendment protected rights of the Individual Plaintiffs as well as similarly situated law-abiding members of Plaintiff Firearms Policy Coalition. This Court should enter judgment enjoining their enforcement and declaring them unconstitutional.

## JURISDICTION & VENUE

6.      This Court has subject-matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

Margin comments:
- Deleted: Defendant's
- Deleted: at which
- Deleted: , like
- Deleted: Defendant's

8. Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

**PARTIES**

9. Plaintiff Charles Ziegenfuss is a natural person, a resident of Wise County, Texas, an adult over the age of 21, and a citizen of the United States. Plaintiff Ziegenfuss is a law-abiding gun owner and is not prohibited under state or federal law from acquiring or possessing firearms or ammunition. Plaintiff Ziegenfuss possesses a license to carry a handgun issued by the Texas Department of Public Safety. Plaintiff Ziegenfuss is subject to Defendants' enforcement of the State's restrictions on his right to bear arms in public, including the Carry Bans at issue here. Plaintiff Ziegenfuss is a member of Plaintiff FPC.

10. Plaintiff David Montgomery is a natural person, a resident of Palo Pinto County, Texas, an adult over the age of 21, and a citizen of the United States. Plaintiff Montgomery is a law-abiding gun owner and is not prohibited under state or federal law from acquiring or possessing firearms or ammunition. Plaintiff Montgomery possesses a license to carry a handgun issued by the Texas Department of Public Safety. Plaintiff Montgomery is subject to Defendants' enforcement of the State's restrictions on his right to bear arms in public, including the Carry Bans at issue here. Plaintiff Montgomery is a member of Plaintiff FPC.

11. Plaintiff Brian Robinson is a natural person, a resident of Kaufman County, Texas, an adult over the age of 21, and a citizen of the United States. Plaintiff Robinson is a law-abiding gun owner and is not prohibited under state or federal law from acquiring or possessing firearms or ammunition. Plaintiff Robinson possesses a license to carry a handgun issued by the Texas Department of Public Safety. Plaintiff Robinson is subject to Defendants' enforcement of the State's restrictions on his right to bear arms in public, including the Carry Bans at issue here. Plaintiff Robinson is a member of Plaintiff FPC.

Margin annotations: **Deleted:** Defendant's (×3)

12. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit membership organization incorporated under the laws of Delaware with a principal place of business in Clark County, Nevada. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms, and protect, defend, and advance the means by which individuals may exercise the right to carry, possess, and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside Texas. FPC's members include individuals who are not prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm. FPC's members, including but not limited to the Individual Plaintiffs, are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. The interests that FPC seeks to protect in this lawsuit are germane to the organization's purposes, and, therefore, FPC sues on behalf of its members, including Plaintiffs Ziegenfuss, Montgomery, and Robinson. Plaintiff FPC has members who are being denied their right to carry in public areas by operation of Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. But for Defendants' enforcement of the laws and regulations challenged herein, FPC's members in Texas would carry a firearm outside the home for lawful purposes including self-defense in the challenged locations.

13. Defendant Steven C. McCraw is sued in his official capacity as the Director of the Texas Department of Public Safety, which includes the Texas Rangers and the Texas Highway Patrol. As "executive director of the department," Tex. Gov't Code § 411.002, McGraw has a duty

Deleted: non-profit
Deleted: Defendant's
Deleted: Defendant's
Deleted: Defendant's

"to enforce the laws protecting the public safety and provide for the prevention and detection of crime," *id.* § 411.002. As Texas has conceded in this litigation, "DPS has authority to enforce every portion of the State's criminal law," which extends to the Penal Code provisions at issue in this litigation. ECF No. 30, Defendant's MSJ Br. 3 (citing Tex. Gov't Code § 411.002(a)).

14. DPS also exercises enforcement authority by carrying out revocations and suspensions of licenses held by those who are charged with violating the Carry Bans. All handgun carry license applications are submitted to, reviewed by, and issued by DPS. Tex. Gov't Code §§ 411.174, 411.176, 411.177. DPS controls the form of license and oversees the denial, revocation, and suspension of licenses. Tex. Gov't Code §§ 411.179, 411.180, 411.186, 411.187. If an individual is charged with a criminal offense (such as carrying a handgun in a location covered by the Carry Bans at issue here), the Government Code requires that DPS administer the suspension or revocation of their handgun license. Tex. Gov't Code § 411.187(a)(1) (suspension of a license); § 411.186(a)(3) (revocation). Here, a violation of the Carry Bans in §§ 46.03(a)(7) (bars) and (a)(4) (racetracks) is a third-degree felony, while a violation of § 46.03(a)(8) (sporting events) is a Class A misdemeanor. Tex. Penal Code §§ 46.03(g), (g-2). DPS "shall suspend a license" if a licensee "is charged with the commission of a Class A or Class B misdemeanor . . . [or] a felony under an information or indictment." Tex. Gov't Code § 411.187(a)(1). And a license is subject to revocation if a licensee is subsequently convicted. Tex. Gov't Code §§ 411.186(a)(3); 411.172(a)(3), (8). If a licensee then contests a suspension or revocation, DPS is required to set an administrative hearing and file a petition to defend its determination in justice court, which must be supported by a preponderance of the evidence. Tex. Gov't Code § 411.180.

15. Defendant James Stainton is the Wise County District Attorney and is sued in his official capacity. The Wise County District Attorney represents the State of Texas in all criminal cases in Wise County. Tex. Const. art. 5, § 21; Tex. Code Crim. Pro. Art. 2A.102(a). The Wise County District Attorney exercises enforcement authority to prosecute individuals for violating the Carry Bans challenged in this case.

16. Defendant Cary Mellema is the Wise County Sheriff and is sued in his official capacity. The Wise County Sheriff is "a conservator of the peace" in Wise County and is required to "arrest each person who commits an offense in the[ir] view or hearing … and take the offender before the proper court for examination or trial," and "apprehend and commit to jail each person who commits an offense until an examination or trial can be held." Tex. Code Crim. Pro. Art. 2A.063(1), (3). The Wise County Sheriff exercises enforcement authority to arrest, apprehend, and commit to jail individuals for violating the Carry Bans challenged in this case.

17. Defendant Jett Smith is the Palo Pinto District County Attorney and is sued in his official capacity. The Palo Pinto County District Attorney represents the State of Texas in all criminal cases in Palo Pinto County. Tex. Const. art. 5, § 21; Tex. Code Crim. Pro. Art. 2A.102(a). The Palo Pinto County District Attorney exercises enforcement authority to prosecute individuals for violating the Carry Bans challenged in this case.

18. Defendant J.R. Patterson is the Palo Pinto County Sheriff and is sued in his official capacity. The Palo Pinto County Sheriff is "a conservator of the peace" in Palo Pinto County and is required to "arrest each person who commits an offense in the[ir] view or hearing … and take the offender before the proper court for examination or trial," and "apprehend and commit to jail each person who commits an offense until an examination or trial can be held." Tex. Code Crim.

Pro. Art. 2A.063(1), (3). The Palo Pinto County Sheriff exercises enforcement authority to arrest, apprehend, and commit to jail individuals for violating the Carry Bans challenged in this case.

19.     Defendant Erleigh N. Wiley is the Kaufman County District Attorney and is sued in her official capacity. The Kaufman County District Attorney represents the State of Texas in all criminal cases in Kaufman County. Tex. Const. art. 5, § 21; Tex. Code Crim. Pro. Art. 2A.102(a). The Kaufman County District Attorney exercises enforcement authority to prosecute individuals for violating the Carry Bans challenged in this case.

20.     Defendant Bryan Beavers is the Kaufman County Sheriff and is sued in his official capacity. The Kaufman County Sheriff is "a conservator of the peace" in Kaufman County and is required to "arrest each person who commits an offense in the[ir] view or hearing … and take the offender before the proper court for examination or trial," and "apprehend and commit to jail each person who commits an offense until an examination or trial can be held." Tex. Code Crim. Pro. Art. 2A.063(1), (3). The Kaufman County Sheriff exercises enforcement authority to arrest, apprehend, and commit to jail individuals for violating the Carry Bans challenged in this case.

21.     Defendant Phil Sorrells is the Tarrant County District Attorney and is sued in his official capacity. The Tarrant County District Attorney represents the State of Texas in all criminal cases in Tarrant County. Tex. Const. art. 5, § 21; Tex. Code Crim. Pro. Art. 2A.102(a). The Tarrant County District Attorney exercises enforcement authority to prosecute individuals for violating the Carry Bans challenged in this case.

22.     Defendant Bill E. Waybourn is the Tarrant County Sheriff and is sued in his official capacity. The Tarrant County Sheriff is "a conservator of the peace" in Tarrant County and is required to "arrest each person who commits an offense in the[ir] view or hearing … and take the offender before the proper court for examination or trial," and "apprehend and commit to jail each

person who commits an offense until an examination or trial can be held." Tex. Code Crim. Pro. Art. 2A.063(1), (3). The Tarrant County Sheriff exercises enforcement authority to arrest, apprehend, and commit to jail individuals for violating the Carry Bans challenged in this case.

23. Defendant John Creuzot is the Dallas County District Attorney and is sued in his official capacity. The Dallas County District Attorney represents the State of Texas in all criminal cases in Dallas County. Tex. Const. art. 5, § 21; Tex. Code Crim. Pro. Art. 2A.102(a). The Dallas District Attorney exercises enforcement authority to prosecute individuals for violating the Carry Bans challenged in this case.

24. Defendant Marian Brown is the Dallas County Sheriff and is sued in her official capacity. The Dallas County Sheriff is "a conservator of the peace" in Dallas County and is required to "arrest each person who commits an offense in the[ir] view or hearing … and take the offender before the proper court for examination or trial," and "apprehend and commit to jail each person who commits an offense until an examination or trial can be held." Tex. Code Crim. Pro. Art. 2A.063(1), (3). The Dallas County Sheriff exercises enforcement authority to arrest, apprehend, and commit to jail individuals for violating the Carry Bans challenged in this case.

25. Defendant Thomas W. Graham is the Executive Director of the Texas Alcoholic Beverage Commission. TABC is responsible for issuing alcoholic beverage licenses and regulating licensees pursuant to the Texas Alcoholic Beverage Code, including oversight over businesses deriving 51% or more of its income from the sale or service of alcoholic beverages for on-premises consumption. Texas Alco. Bev. Code § 104.06(c); Texas Gov't Code § 411.204(a). TABC has enforcement authority to address violations of the Alcoholic Beverage Code. Texas Alco. Bev. Code §§ 101.61, 101.01.

**GENERAL ALLEGATIONS**

I.   **Texas Law Forbids Carrying Firearms In Ordinary Public Places.**

26.   Despite *Bruen*'s confirmation that peaceable citizens such as Plaintiffs have a "general right" to carry handguns outside the home, Texas law forbids possessing a firearm in a variety of ordinary public places. Penal Code § 46.03(a).

27.   *Businesses Deriving 51% or More of Their Sales From Alcohol*. Texas imposes criminal liability on citizens who exercise their right to bear arms "on the premises of a business that has a permit or license issued under [the] Alcoholic Beverage Code, if the business derives 51 percent or more of its income from the sale or service of alcoholic beverages for on-premises consumption . . . ." Penal Code § 46.03(a)(7).[1] Based on this definition, and based on Plaintiffs' information and belief, Section 46.03(a)(7)'s Carry Ban is not limited to just bars, but rather applies to a number of restaurants and other establishments throughout the State. The ban operates as a blanket prohibition on carrying arms in these locations, regardless of whether an individual is consuming alcohol. Violating this ban is a third-degree felony. Penal Code § 46.03(g). Third-degree felonies are punishable by imprisonment for between two and ten years and a fine of up to $10,000. *Id.* § 12.34.

28.   Defendant TABC is responsible for enforcing the "51%" rule by among other things, enforcing the statutory requirement that retailers post a sign on their premises providing notice "that it is unlawful for a person [with a carry license] to carry a handgun on the premises." Tex. Gov't Code § 411.204(c); *see* Texas Alco. Bev. Code § 104.06(c)) (requiring compliance with "51%" rule). Retailers that violate the statutory requirements are subject to disciplinary

---

[1] The "51%" determination is based on the Texas Alcoholic Beverage Commission's authority to monitor each license holder's gross receipts under Alcoholic Beverage Code § 104.06. Penal Code § 46.03(a)(7).

action, including license cancellation. Texas Alco. Bev. Code §§ 101.61, 101.01 (providing authority to seek a restraining order or injunction to prevent code violations). TABC conducts this enforcement in conjunction with the Defendant District Attorneys, Texas Alco. Bev. Code § 101.01(a), as well as peace officers under DPS' control, *id.*, §§ 101.02, 101.07.

29. *Racetracks*. Texas imposes criminal liability on citizens who exercise their right to bear arms "on the premises of a racetrack." Penal Code § 46.03(a)(4). A "racetrack" is defined as a facility licensed "for the conduct of pari-mutuel wagering on horse racing or greyhound racing." Penal Code § 46.01(15) (incorporating definition in Occupations Code § 2021.003(41)). Violating this ban is a third-degree felony. Penal Code § 46.03(g).

30. *Sporting Events*. Texas imposes criminal liability on citizens who exercise their right to bear arms "on the premises where a high school, collegiate, or professional sporting event or interscholastic event is taking place . . . ." Penal Code § 46.03(a)(8).[2] Violating this Carry Ban is a class A misdemeanor. Penal Code § 46.03(g-2). Class A misdemeanors are punishable by a fine of $4,000 or less, up to a year in jail, or both. *Id*. § 12.21.

31. The Carry Bans are subject to minor exceptions for prosecutors, police officers, and the like. Penal Code § 46.15. But an ordinary, law-abiding member of the general public, including the Individual Plaintiffs, cannot carry a firearm at these locations. In addition to the immediate criminal penalties associated with violating any of these Carry Bans, a violation can also result in a lifetime ban on an individual's ability to exercise their right to keep and bear firearms under state and federal law. *See* Penal Code § 46.04(a)(1); 18 U.S.C. § 922(g).

---

[2] The statute contains a narrow exemption only where a "person is a participant in the event and a firearm, location-restricted knife, club, or prohibited weapon listed in [Penal Code] Section 46.05(a) is used in the event." Penal Code § 46.03(a)(8).

**II.    The Carry Ban's Effects on Plaintiffs**

32.    Plaintiff Ziegenfuss owns a semiautomatic pistol that he generally carries for self-defense purposes when going about his day-to-day life. Plaintiff Ziegenfuss, who resides in Wise County, prefers to carry a firearm for personal self-defense at all times and in all locations, including in Tarrant County and Dallas County. The Carry Bans challenged here, however, prevent him from doing so. Plaintiff Ziegenfuss regularly visits so-called "51%" businesses and he must disarm himself—either by leaving home without a firearm or by securing his firearm in his vehicle—while doing so because of § 46.03(a)(7)'s Carry Ban. Plaintiff Ziegenfuss would like to carry his personal firearm for self-defense to "51%" businesses and would not consume alcohol while doing so. Furthermore, Plaintiff Ziegenfuss has elected not to attend sporting events because of Section § 46.03(a)(8)'s Carry Ban. But for the prohibition, Plaintiff Ziegenfuss would attend sporting events while carrying his personal firearm for self-defense. Plaintiff Ziegenfuss similarly will not go to racetracks because he is prohibited from carrying a firearm under § 46.03(a)(4), but he would do so if he were permitted to carry his personal firearm for self-defense.

> **Deleted:** Plainiff

33.    Plaintiff Montgomery owns a semiautomatic pistol that he generally carries for self-defense purposes when going about his day-to-day life. Plaintiff Montgomery, who resides in Palo Pinto County, prefers to carry a firearm for personal self-defense at all times and in all locations, including in Tarrant County and Dallas County. The Carry Bans challenged here, however, prevent him from doing so. Plaintiff Montgomery regularly visits so-called "51%" businesses and he must disarm himself—either by leaving home without a firearm or by securing his firearm in his vehicle—while doing so because of § 46.03(a)(7)'s Carry Ban. Plaintiff Montgomery would like to carry his personal firearm for self-defense to "51%" businesses and would not consume alcohol while doing so. Furthermore, Plaintiff Montgomery has elected not to attend sporting events, or to

disarm himself while doing so, because of Section § 46.03(a)(8)'s Carry Ban. But for these prohibitions, Plaintiff Montgomery would attend sporting events while carrying his personal firearm for self-defense.

34. Plaintiff Robinson owns a semiautomatic pistol that he generally carries for self-defense purposes when going about his day-to-day life. Plaintiff Robinson, who resides in Kaufman County, prefers to carry a firearm for personal self-defense at all times and in all locations, including in Tarrant County and Dallas County. The Carry Bans challenged here, however, prevent him from doing so. Plaintiff Robinson routinely refuses to visit so-called "51%" businesses because of Texas' carry prohibition because of § 46.03(a)(7)'s Carry Ban. Plaintiff Robinson would like to carry his personal firearm for self-defense to "51%" businesses and would not consume alcohol while doing so. Plaintiff Robinson has also elected not to attend sporting events because of Section § 46.03(a)(8)'s Carry Ban. But for the prohibition, Plaintiff Robinson would attend sporting events while carrying his personal firearm for self-defense.

35. In short, the Carry Bans' restrictions on carrying firearms in these spaces disable the Plaintiffs, including FPC's similarly situated members, from exercising their Second Amendment protected rights.

36. Plaintiff FPC has members and supporters in Texas who intend and desire to exercise their right to keep and bear arms by carrying on their person a loaded, operable handgun for lawful purposes, including self-defense, at "51%" businesses, racetracks, and sporting events, in case of confrontation. But for the Carry Bans challenged here, and the Defendants' enforcement thereof, and the severe lifelong and criminal penalties associated with violations of the regulatory scheme, Plaintiff FPC's members, including Plaintiffs Ziegenfuss, Montgomery, and Robinson would exercise their right to keep and bear arms at these locations by carrying on their person a

**Deleted:** Defendant's

loaded, operable handgun for lawful purposes, including immediate self-defense in case of confrontation.

37. The three Carry Bans individually and collectively operate to deny Plaintiffs, including FPC's similarly situated members, and other typical law-abiding individuals from carrying loaded, operable handguns in case of confrontation for immediate self-defense in public places.

**III.   Section 46.03's Carry Bans Violate The Second Amendment.**

38. The Second Amendment is applicable to the States as incorporated via the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring). "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).

39. To determine whether a state's firearm restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24.

40. *Bruen* has already established that the Second Amendment covers Plaintiffs' proposed conduct here—carrying arms publicly for self-defense and other lawful purposes. 597 U.S. at 32–33. As such, the Second Amendment "presumptively protects" Plaintiffs' right to carry firearms in public in Texas. *Id.* at 24.

41. It is thus Defendants' burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

[Deleted: the State's]

-14-

*Bruen*, 597 U.S. at 19. If a state seeks to restrict firearms in a particular location as a so-called "sensitive place," which Defendants may attempt to do here, it must prove that its current restriction is sufficiently analogous to a "well-established and representative historical analogue." *Id.* at 30. This analogical analysis is focused on determining "whether the challenged regulation is consistent with the principles that underpin the Nation's regulatory tradition." *United States v. Rahimi*, 144 S. Ct. 1889, 1898.

42.  Defendants cannot meet their burden here because there is no historical tradition—let alone a well-established and representative one—for banning the carriage of firearms at bars and restaurants, racetracks, sporting events, or analogous locations. In *Bruen*, the Court "assume[d]" that carry could be restricted at certain "sensitive places" in accordance with a yet-untested historical tradition. 597 U.S. at 30. But even then, the Court identified only three such sorts of locations at or near the Founding "where weapons were altogether prohibited": legislative assemblies, polling places, and courthouses. *Id.* (citing Kopel & Greenlee, *The "Sensitive Places" Doctrine*, 13 CHARLESTON L. REV. 205, 289–90 (2018)). Accordingly, this Court "can use analogies to *those* historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Bruen*, 597 U.S. at 30 (emphases added). Moreover, the Court cautioned against overexpansion of sensitive places, lest they become the exception that swallows the rule of "a general right to public carry." *Id.* at 33. Thus, "sensitive places" must remain "few" and "exceptional." *Id.* at 30, 38; *see also Range v. U.S. Att'y General*, 69 F.4th 96, 105 (3d Cir. 2023) ("[H]istorical restrictions on firearms in 'sensitive places' do not empower legislatures to designate any place 'sensitive' and then ban firearms there[.]").

-15-

43. The locations at issue here cannot be analogized to the very few—and very different—locations considered "sensitive" at and around the time of the Founding. Specifically, laws from the Colonial and Founding Eras that the government comprehensively secures, as illustrated by the Founding Era laws barring carry in polling places, legislatures, and courthouses, as well as the broader affray tradition indicate that firearms can be banned in locations. One principle seemingly underlying these historical regulations is that carry may be restricted in certain highly sensitive locations such as courthouses where the government has taken the burden of security upon itself and the need for self-defense may be reduced.

44. The Carry Bans are further inconsistent with the Nation's historical tradition of permitting carry in all manner of places where people gathered. Indeed, the *Bruen* Court expressly rejected New York's attempt to justify its "proper cause" requirement as analogous to a historical "sensitive place" regulation. 597 U.S. at 30–31. The Court explained that a state may not simply ban guns wherever people may "congregate" or assemble: A rule that "expand[ed] the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." *Id.* at 31. "Put simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id.*

## CLAIM FOR RELIEF

### 42 U.S.C. § 1983

**(Second and Fourteenth Amendments to the United States Constitution)**

45. Plaintiffs reiterate paragraphs one through 44 as if fully set forth herein.

-16-

46. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend II.

47. The Supreme Court has squarely held that the Second Amendment protects an individual right to keep and bear arms, and that all responsible, law-abiding Americans may exercise that right. *See Heller*, 554 U.S. 570.

48. In *Bruen*, the Supreme Court held that the Second Amendment protected right to keep and bear arms fully extends to general carry of arms in public. *See Bruen*, 597 U.S. at 32–33.

49. The *Bruen* framework begins with the plain text. If the plaintiffs' proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." 597 U.S. at 17, 24.

50. *Bruen* has already established that the Second Amendment covers Plaintiffs' proposed conduct here—carrying arms publicly for self-defense and other lawful purposes. *Id.* at 32–33.

51. Accordingly, it is Defendants' burden to "justify" Section 46.03's Carry Bans "by demonstrating that [they are] consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 24. But Defendants cannot do so here. There is no "well-established, representative historical analogue" for Section 46.03's bans on firearms at businesses that sell a certain amount of alcohol, racetracks, and/or sporting events. The bans imposed by Sections 46.03(a)(4), (a)(7), and (a)(8) are facially unconstitutional under the Second Amendment because they ban the carry of firearms at these location by law-abiding citizens otherwise entitled to carry in public.

52. Each of the Individual Plaintiffs and Firearms Policy Coalition's other, similarly situated members in Texas are directly, substantially, and adversely affected by the foregoing violation of the Second Amendment. But for Texas' Carry Bans, and the fear of prosecution for violating the law, Individual Plaintiffs would and have concrete plans to possess, wear, carry or transport firearms in one or more such prohibited locations in the future. Plaintiffs, including FPC's members, have a reasonable fear of prosecution under Texas' Carry Bans if they were to carry firearms at the prohibited locations challenged above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request:

1. That this Court issue a declaratory judgment that Texas Penal Code §§ 46.03(a)(4) (racetracks), 46.03(a)(7) (businesses where alcohol accounts for 51% or more of sales), and 46.03(a)(8) (sporting events), with respect to places open to the public, are unconstitutional under the Second and Fourteenth Amendments insofar as these provisions prohibit the public carriage of arms at these challenged locations;

2. That this Court issue a permanent injunction against Defendants, each of their agents, employees, persons under their lawful control, and all persons who are in active concert or participation with Defendants, restraining and enjoining the enforcement of Penal Code §§ 46.03(a)(4) (racetracks), 46.03(a)(7) (businesses where alcohol is 51% of sales), and 46.03(a)(8) (sporting events) with respect to places open to the public.;

3. That this Court issue a permanent injunction against Defendants, each of their agents, employees, persons under their lawful control, and all persons who are in active concert or participation with Defendants, restraining and enjoining the enforcement of Texas Alcoholic Beverage Code § 104.06(c) and Government Code § 411.204(c); and

4. That this Court award costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988 and any other applicable law, and all further relief to which Plaintiffs may be entitled.

Dated: June 26, 2025

                                            Respectfully submitted,

/s/ [DRAFT]                                     /s/ [DRAFT]
Bradley A. Benbrook (TX Bar No. 24142064)*      R. Brent Cooper (TX Bar No. 04783250)
Stephen M. Duvernay (TX Bar No. 24139565)*     COOPER & SCULLY, P.C.
BENBROOK LAW GROUP, P.C.                      900 Jackson Street, Suite 100
701 University Avenue, Suite 106                       Dallas, Texas 75202
Sacramento, California 95825                          Telephone: (214) 712-9500
Telephone: (916) 447-4900                             Telecopy: (214) 712-9540
Telecopy: (916) 447-4904                               brent.cooper@cooperscully.com
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

                                                                            *Attorneys for Plaintiffs*

*Admitted pro hac vice

| Page 1: [1] Deleted | BLG | 6/18/25 1:54:00 PM |